**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     PLANTIFF, <br><br> v. <br><br> JAY EARNEST NIDAY, <br><br>     DEFENDANT. | NO. 20-CR-4081-LTS <br><br><br> **DEFENDANT'S SENTENCING MEMORANDUM & BRIEF IN SUPPORT OF DOWNWARD VARIANCE FROM GUIDELINES** |

The defendant, Jay Earnest Niday, through counsel, hereby submits the following Memorandum for the sentencing set for April 1, 2021, at 2:00 o'clock p.m.:

I.   FACTS………………………………………………………………………………..2

II.  WITNESSES AND EXHIBITS……………………………………………………4-5

III. ARGUMENT………………………………………………………………...……..5

   1. Mr. Niday should not receive an upward adjustment either for his role in the offense or because of an abuse of public trust………………………….5

   2. Mr. Niday's sentence should be reduced significantly below the guideline range because of the nature and circumstances of the offense, Mr. Niday's particular participation in the offense, his lack of criminal history, his age, the absence of any need to protect the public from any further crimes by him, and because a "stiff" sentence is not necessary to adequately deter criminal conduct (by Mr. Niday or anyone else)…………………………..7

IV.  CONCLUSION…………………………………………………………………….9

I.   FACTS:

Codefendant Patrick Schwarte and Defendant Jay Niday both pleaded guilty to an information charging (Count 1) conspiracy in violation of 18 U.S.C. § 371, and (Count 2) knowingly falsifying, tampering with, or rendering inaccurate a monitoring device or method required to be maintained by the Clean Water Act in violation of 33 U.S.C. § 1319(c)(4).  This prosecution pertains to the Wastewater Treatment Plant (WWTP) at 3100 South Lewis Boulevard in Sioux City, Iowa.  (PSIR ¶ 14)  That plant was constructed in 1961 (Id).  The plant had been managed since 2004 by American Water Services, Inc. ("American Water").  (PSIR ¶ 37)

The National Pollutant Discharge Elimination System ("NPDES") governs the discharge of pollutants into waters of the United States.  (PSIR ¶ 7)  The treatment plants are required to test the effluent (water discharged into the river) from March 15th through November 15th of each calendar year (the "disinfection season") (PSIR ¶ 21-22) for "fecal coliform".[1]  There are many different technologies by which a treatment plant may disinfect its wastewater, and in the 2000's the City of Sioux City converted the plant from a gas chlorine disinfection system to a liquid chlorine disinfection system.  (PSIR ¶ 25)

In June, 2015, the employment of both Schwarte and Niday was terminated by the City of Sioux City (PSIR ¶ 77) after it was discovered that the amount of chlorine being applied to the effluent was increased immediately before testing so that the water

---

[1] From November 16th through March 14th this effluent is untreated.

2

treatment plant would pass the test, and then the chlorine levels were turned back to minimal levels. (PSIR ¶ 55-57).

Mr. Schwarte's and Mr. Niday's stipulation of facts in their plea bargains are virtually identical. (Doc. 10 for Niday). As noted in the PSIR (¶ 41), Schwarte was a thirty-year veteran employee at the plant and he possessed a grade II wastewater certification and possessed extensive training and experience in municipal wastewater management. That same paragraph states that "On January 3, 2011, the city assumed operation of the WWTP from American Water. The City hired the defendant and Patrick Schwarte, two American Water employees, as the WWTP's Superintendent and Shift Supervisor, respectively." Mr. Niday objected to this paragraph because it implied that the two of them started working at the WWTP at the same time. In fact, Schwarte had been there for several years before Niday began working at the plant. (2015 employment termination minus 30 years = about 1985 would have been when Schwarte started there.) Mr. Niday started work at the WWTP (then operated by American Water) in August of 2009. (PSIR ¶ 116).

At Mr. Schwarte's sentencing it was unsuccessfully argued by the government that Schwarte should receive an upward adjustment for aggravating role in the offense under USSG § 3B1.1 or for abuse of a position of public trust/use of a special skill pursuant to USSG § 3B1.3. Schwarte argued that Niday was the only other "participant" in the instant offense, and so he did not act as a "leader or organizer" for the purpose of his role in the criminal offense. Jay Niday told the government in his proffer that he was guilty of these charges because he found out that Pat Schwarte was monkeying with the chlorine

3

levels and instead of firing him or reporting him he told him to quit doing it, and then he did not follow up and make sure that the fraudulent testing ceased but instead looked the other way. With regard to the five "first-shift" operators acting at the direction of defendant and Schwarte (Doc. 10 p. 10 "U") Mr. Niday believes the government will concede that these workers, who would have been operating the controls, were instructed by Schwarte—not Niday. Furthermore, that particular paragraph of the plea agreement (¶ U of Doc. 10), which contained 89 initialed paragraphs on 25 pages, is stressed by the presentence author as the reason for an upward role for Mr. Niday. (PSIR ¶ 86). That paragraph states:

> "U. No later than July 2012, defendant and Schwarte—and at least five first-shift operators acting at the direction of defendant and Schwarte—tampered with the monitoring methods at the WWTP in order to ensure the WWTP would pass all of its tests. The City did not report any exceedances of its 2006 Permit limits after July 2012."

Mr. Niday does not deny he initialed that paragraph but he consistently told the government that he did not learn that Schwarte was turning the chlorine down until about 2014.

II. WITNESSES AND EXHIBITS:

The defendant does not anticipate calling any witnesses at the sentencing hearing.

Mr. Niday anticipates offering the following character letters and court documents and news articles pertaining to cases the defense believes are similar to this case for sentencing:

Exhibit 101: Letter from Kennedy Candor.

Exhibit 102: Letter from Doug Rainforth.

Exhibit 103: Letter from James Bane, P.E..

Exhibit 104: Letter from Jay Whalen.

Exhibit 105: Letter from Robin Niday.

Exhibit 106: Information, guilty plea, and judgment in US v. Wolf (CR14-4091).

Exhibit 107: Sioux City Journal article (10/05/2020) about Thomas Miller.

Exhibit 108: Sioux City Journal article (2/14/2021) about Calvin Diehl.

III. ISSUES:

1. Mr. Niday should not receive an upward adjustment either for his role in the offense or because of an abuse of public trust.

Jay Niday was not the organizer or leader of this criminal activity. He was not Schwarte's "leader or organizer". He was the plant superintendent. As such, he was Schwarte's superior but the guideline speaks in terms of being the organizer or leader of a criminal activity. Schwarte had been working at the plant for years before Niday worked there. The government bears the burden of proving by a preponderance of the evidence that the aggravating role enhancement is warranted. *United States v. Garcia*, 703 F.3d 471, 475 (8th Cir. 2013) (*citing United States v. Gaines*, 639 F.3d 423, 427 (8th Cir. 2011). Mr. Niday denies that he started this ball rolling. The five "first-shift" operators were acting upon Schwarte's direction—not his. Furthermore, there is a lack of evidence that any other worker besides Schwarte and Niday were criminally responsible for the

5

commission of the offense. "'A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted.' USSG § 3B1.1 cmt. (n.1) (2016). 'A person who is not criminally responsible for the commission of the offense ... is not a participant.'..." *United States v. Keleta*, 949 F.3d 1082 (8th Cir. 2020). The *Keleta* case involved a tax-fraud conspiracy case in which Keleta, Lewis, and Paulos were charged and Lewis and Paulos pleaded guilty and testified against Keleta. Keleta's PSIR applied a four-level role enhancement under USSG § 3B1.1(a). Keleta objected on the basis that the government had not identified five criminally responsible participants as required by the enhancement. The government argued that Keleta, Lewis, Paulos, and the "seven customers" who testified at trial each counted as "participants". The district court imposed the upward enhancement and the circuit reversed, citing *United States v. Hammerschmidt*, 777 F. App'x 171, 173 (8th Cir. 2019). *United States v. Keleta*, (Id. at 948-949). The case of *United States v. Tuma*, 738 F.3d 681 (5th Cir. 2013), cited by United States Probation, is distinguishable from the case at hand because of the nature and extent of that conspiracy and the clear purpose of that enterprise (making money for Mr. Tuma).

Defendant Niday should not be held to have abused his position of public trust because although he has special skill in the water treatment arena so did co-defendant Schwarte, and Schwarte was the person who had been at the plant the longest and he was the person who directly dealt with the employees on the line. Defendant *Kuhn* ordered illegal pumping, hauled away soil to cover his tracks, told technicians to change their

6

testing results and asked other technicians to change the results. Furthermore, in *Kuhn* the defendant did not object to the two-level increase for role and for abuse of trust.

    2.    Mr. Niday's sentence should be reduced significantly below the guideline range because of the nature and circumstances of the offense, Mr. Niday's particular participation in the offense, his lack of criminal history, his age, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and because there is no need to protect the public from any further crimes by him.

Jay Niday will be sixty-four years old in April. Other than a first offense OWI thirty-seven years ago, he has no criminal record. (PSIR ¶ 97). He graduated high school in 1975 and earned a Water Environmental Technology certificate from Kirkwood Community College two years later. (PSIR ¶ 114). He has worked his whole life in the wastewater industry. (Exhibit 102) (Exhibit 103) (PSIR ¶ 116). His employment with the City of Sioux City was terminated because of his present offense. He then became employed at Tyson Foods as a dredging manager but resigned just before pleading guilty to this offense because Tyson informed him he would be terminated upon his conviction. (PSIR ¶ 116). He has had no problems on pretrial release. Jay is an avid hunter but with this conviction he has lost his gun rights. Jay also fishes and he goes to Canada about every year with his fishing buddies (but that will not happen anymore with this conviction).

Robin Niday, Jay's wife, writes that the two of them have been together for 10 years; married for 5. She and Jay are aware of the gravity of this crime and its repercussions. They have lost jobs, homes, vehicles, money, and retirements. (Exhibit

105). Robin writes "Our future is uncertain and that has caused a lot of stress and sleepless nights. Jay has never been in any trouble before and he prides himself on his honesty and integrity…I beg you for your leniency as I need my husband & his children need their father." (Id.) Jay is a family man. He keeps in regular contact with his elderly parents and his four sibling sisters. (PSIR ¶ 104-105). Perhaps most telling about Mr. Niday's true character is the letter written by Kennedy Candor, his step-daughter (a term Jay would not like because he has treated Robin's children as his own). (Exhibit 101). "Jay became a part of our lives when I was 14 years old…He came to every one of my softball games…(he) offered to walk me down the aisle…He made me feel like I always had him as a dad…Jay has always been the backbone of our family". (Id.)

Our Supreme Court has recognized that offenders on probation are subject to several standard conditions that substantially restrict their liberty. *Gall v. United States*, 552 U.S. 38, 48 (2007). Gall was a college student who joined a conspiracy to distribute ecstasy. In so doing he netted over $30,000 (at least 2,500 grams of ecstasy) over a seven month period during which he used ecstasy, cocaine, and marijuana. He voluntarily withdrew from the conspiracy but was facing a guideline sentence of 30-37 months imprisonment. (Id. at 41-43). The district judge sentenced Gall to probation for a term of 36 months and the government appealed. The Eighth Circuit Court of Appeals reversed and remanded for resentencing. The Supreme Court reversed the 8th Circuit holding

> …it is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable. On abuse-of-discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the

whole, justified the sentence. Accordingly, the judgment of the Court of Appeals is reversed. (Id. at 59-60).

The Court further acknowledged that age of a defendant is a factor which a district court can consider (in that case Gall was young—in this case Mr. Niday is facing retirement age).

The government had also argued in *Gall* that his sentence should be increased to avoid unwarranted sentencing disparities among codefendants who have been found guilty of similar conduct. Patrick Schwarte was sentenced to a term of two years' probation (concurrent on each count) with 60 days of radio frequency monitoring, a $200 special assessment, and a $5,000 fine. (PSIR page 2.) *See also* Exhibits 106, 107, and 108 (which are submitted by counsel as evidence of similar defendants who have been found guilty of similar conduct).

IV. CONCLUSION:

Mr. Niday asks the Court to grant his motion for downward variance and impose a sentence which is not greater than necessary, but is sufficient to do justice in this case.

Respectfully Submitted,

BY: /s/John P. Greer  
John P. Greer  
13 W. 4th Street  
P. O. Box 215  
Spencer, Iowa 51301  
712-262-1444  
Attorney for Defendant