IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 20-CR-4081 |
| vs. | ) | |
| JAY EARNEST NIDAY, | ) | |
| Defendant. | ) | |

**RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND
RESISTANCE TO MOTION FOR DOWNWARD VARIANCE**

Witnesses:

None

Additional Exhibits:

4.  Excerpt from Grand Jury Testimony of D.M.

5.  Excerpt from Grand Jury Testimony of D.G.

## I. The Probation Office Correctly Calculated Defendant's Guideline Range

### A. Role

Defendant argues there is no evidence that his subordinates at the WWTP, other than his coconspirator Patrick Schwarte, were criminally responsible for the commission of the tampering offense. To the contrary, in his plea agreement defendant stipulated, "[n]o later than July 2012, defendant and Schwarte—and at

1

least five first-shift operators acting at the direction of defendant and Schwarte—tampered with the monitoring methods at the WWTP in order to ensure the WWTP would pass all of its tests." Plea Agreement (Doc. 10), at ¶ 14(U).[1]

Because defendant has admitted that he directed Schwarte and at least five first-shift operators in "tamper[ing] with the monitoring methods at the WWTP to ensure the WWTP would pass all of its tests," the lower-level workers at the WWTP were "participants" for purposes of USSG §3B1.1(a). The Guidelines define a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG §3B1.1, cmt. n.2. Here, defendant's subordinates were "participants" in defendant's offense, because it is a federal crime to "tamper[] with a monitoring method" or assist another person in that endeavor. *See* 33 U.S.C. § 1319(c)(4); 18 U.S.C. § 2.

While it is not required for the government to prove that any of defendant's subordinates knew their actions were illegal, in this case the tampering activity was patently illegal to those who worked for defendant. *See*, *e.g.*, Ex. 5 (WWTP employee stating he raised his concerns about the practice to defendant and Schwarte and testifying, "I knew it was not right."). Schwarte has pled guilty to conspiring with defendant to tamper with a monitoring method, and the first-shift

---

[1] To the extent defendant now denies this stipulated fact, the Court should enforce this factual stipulation in the plea agreement. The government is also filing under seal excerpts of two grand jury transcripts that demonstrate that defendant was confronted internally at the WWTP about his tampering practice no later than 2012. *See* Exhibits 4 and 5. The 2012 timing makes sense in light of the serious problems with the WWTP, outlined in the government's sentencing memorandum, which defendant and other City officials discovered in 2011.

operators were not, for example, victims of defendant's conduct. For this reason, *United States v. Keleta*, 949 F.3d 1082 (8th Cir. 2020), is inapposite. *See Keleta*, 949 F.3d at 1094 (reversing role enhancement where the government emphasized to the jury during a trial that the individuals in question—the defendant's customers—were victims of the defendant's tax fraud scheme, because if the individuals were victims then they could not be "participants" in the scheme).

In any event, for the reasons identified in the government's sentencing memorandum, the role enhancement applies in this case even if the Court does not find that the lower-level employees were "participants," because the activity was nonetheless "otherwise extensive." *See* USSG §3B1.1(a). Defendant has no answer for this point. Under either the "participant" or "otherwise extensive" prong of §3B1.1(a), then, the Court should overrule defendant's objection to the four-level role enhancement here.

### B. Abuse of Trust/Special Skill

Defendant appears to concede "he has a special skill in the water treatment area" but insists there is no abuse of a position of trust because "Schwarte was the person who had been at the plant the longest and he was the person who directly dealt with the employees on the line." Motion (Doc. 21), at 6. While it is true that Schwarte had worked at the WWTP longer than defendant and was the direct supervisor of the first-shift operators, neither fact is relevant to the abuse of trust or special skill analyses under the Guidelines commentary discussed in the government's opening brief. *See* USSG §3B1.3, comment., nn. 1, 3.

3

The principle stated in *Kuhn* that a wastewater superintendent holds a position of trust vis-à-vis the public is consistent with the decisions of other circuit courts of appeals. For example, the Seventh Circuit Court of Appeals affirmed the abuse-of-trust enhancement for an environmental manager at an oil refinery in *United States v. Snook*, 366 F.3d 439 (7th Cir. 2004). The Seventh Circuit wrote:

> The Clean Water Act is public-welfare legislation and the victims of violations are the public. *United States v. Technic Servs., Inc.,* 314 F.3d 1031, 1049 (9th Cir.2002). As Environmental Manager at Clark, Snook was given discretion to devise Clark's wastewater treatment and testing systems, as well as to decide when to conduct such testing. And although the District did periodically conduct its own testing, it was for the most part dependent on the data that Clark reported. The facts here illustrate this point effectively—for over three years Clark's wastewater had numerous violations that went undetected because Snook, in his unique position as Environmental Manager, did not report them. Moreover, unlike other self-reporting situations (taxpayers, for example), the regulations here apply to matters that directly and significantly affect the public's health and safety. *See United States v. Gonzalez–Alvarez,* 277 F.3d 73, 81–82 (1st Cir.2002) (abuse-of-trust increase applied to dairy farmer for not complying with egulations); *United States v. White,* 270 F.3d 356, 372–73 (6th Cir.2001) (employee at water-treatment plant); *United States v. Turner,* 102 F.3d 1350, 1360 (4th Cir.1996) (owners and operators of coal mine); *but see Technic,* 314 F.3d at 1049–52 (not applied to private contractor hired to clean up asbestos). Given the responsibility and discretion given to Snook in his position as Environmental Manager in complying with the District's regulations, and his abuse of that position, the district court did not err in applying the sentencing increase.

*United States v. Snook*, 366 F.3d 439, 445-46 (7th Cir. 2004). Just as in *Kuhn* and *Snook*, the enhancement should apply to defendant, because the public expects that persons of responsibility such as defendant will comply with the Clean Water Act—not cheat it. *See United States v. Gonzalez-Alvarez*, 277 F.3d 73, 81 (1st Cir. 2002) ("[W]e consider relevant to a § 3B1.3 inquiry whether the public expects that people

4

in the position of the defendant will comply with health and safety regulations for which they are responsible.")

## II. The Court Should Impose a Sentence Within the Guidelines Range

In his Sentencing Memorandum (Docs. 20, 21), defendant requests a downward variance to a probationary sentence from his advisory Sentencing Guidelines range of 30 to 37 months' imprisonment. The government resists defendant's request for a downward variance.

The strength of the aggravating factors outweighs those of the mitigating ones here. Defendant's offense is a very serious environmental offense. The conspiracy involved a multi-year effort to cheat on required environmental testing at one of the State of Iowa's largest wastewater treatment plants. Defendant was the superintendent of the entire wastewater treatment plant. He held a position of trust vis-à-vis his community and the Missouri River. As a result of defendant's actions, millions of gallons of undisinfected wastewater were discharged into the Missouri River for years. Then, on testing days, large amounts of chlorine were dumped into the Missouri River. This conspiracy put recreational users and wildlife at risk in a major river of the United States.

Defendant has no appreciable criminal history, but the Guidelines already take this mitigating factor into account by placing defendant within Criminal History Category I. Leniency here by virtue of a downward variance would not reflect the seriousness of the offense, promote respect for the law, or provide a just punishment. 18 U.S.C. § 3553(a)(2)(A). And while at this point there is perhaps

little need to protect the public from further crimes of the defendant or further the goal of specific deterrence, 18 U.S.C. § 3553(a)(B), (C), the Congressionally identified factor of general deterrence is very weighty in this case. Those who run waste and drinking water plants for cities in this country must know that, if they rig the tests and put the public welfare at risk, they will be held to account and not receive leniency. That is especially true, where, as here, the mitigating factors are not present to any more unusual or significant degree than what one might expect in a white-collar criminal case.

The fact defendant was able to cheat for so long without being caught is a testament to the seriousness of the offense. When that discretion is intentionally abused to make a problem disappear—in this case, the startling fact the Sioux City WWTP was not working properly—there must be a clear message to others in similar positions and to the public at large.

As the Court knows, the undersigned was counsel in the *Diehl* case. Diehl is inapposite for a number of reasons. In *Diehl*, the low-end of the defendant's Guideline range was 7 months after a government-sponsored downward departure and the Court imposed a sentence of 3 months' imprisonment. That case involved blending of oats into soybeans, not a major environmental violation involving a regional wastewater plant and the Missouri River. Diehl received a role enhancement but was not the organizer of the grain blending conspiracy and did not abuse a position of public trust.

The undersigned was not counsel in the *Wolf* case but researched it. It appears the Guideline range in *Wolf* was only 12 to 18 months' imprisonment, and the defendant in that case committed a one-time environmental offense as opposed to a multi-year conspiracy to defraud the United States. There was no abuse of the public trust in that case either.

Finally, this Court should sentence defendant independently of Schwarte. The Eighth Circuit Court of Appeals has held that "[t]he statutory direction to avoid unwarranted disparities among defendants, 18 U.S.C. § 3553(a)(6), refers to national disparities, not differences among co-conspirators." *United States v. Campbell*, 986 F.3d 782, 800 (8th Cir. 2021) (quoting *United States v. Pierre*, 870 F.3d 845, 850 (8th Cir. 2017)). In any event, Schwarte's Guidelines range was much lower than defendant's, effectively 12 to 18 months after a government-sponsored downward departure. Most importantly, however, there were a number of mitigating factors present in Schwarte's case. Those factors included the fact that Schwarte was a decorated Vietnam Veteran, was in his 70s, had serious health conditions involving his lungs that were of particular concern before vaccines were available for COVID-19, and was the caregiver for his blind wife. None of these mitigating factors are present in this case.[2]

                                                  Respectfully submitted,

                                                  SEAN R. BERRY

---

[2] Again, to the extent defendant's downward variance is predicated on facts that are contrary to those to which he stipulated in his plea agreement, the government would request that the Court enforce the factual stipulations in the plea agreement.

Acting United States Attorney

By, */s/ Timothy L. Vavricek*

TIMOTHY L. VAVRICEK
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, IA  52401-2101
(319) 363-6333
(319) 363-1990 (Fax)
tim.vavricek@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2021, I electronically filed the foregoing and its attachments with the Clerk of Court using the ECF system which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY: /s/TV

Copy to:
Mr. J.P. Greer
USPO